UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN INGRAM, | : | |
|    *Plaintiff*, | : | |
| | : | |
| v. | : | No. 3:17-cv-870 (KAD) |
| | : | |
| DAVID SOCHACKI, D.D.S., *et al.* | : | |
|    *Defendants*. | : | October 9, 2018 |

**RULING ON MOTION TO DISMISS (Doc. No. 37) AND
MOTION FOR LEAVE TO AMEND COMPLAINT (Doc. No. 41)**

**Preliminary Statement of the Case**

On May 24, 2017, the plaintiff, John Ingram, a prisoner currently confined at the Cheshire Correctional Center ("Cheshire") in Connecticut, filed a complaint *pro se* under 42 U.S.C. § 1983 against several state correctional dental care professionals for violating his rights under the Eighth and Fourteenth Amendments of the United States Constitution. Compl. (Doc. No. 1). Therein, he claims that the defendants acted with deliberate indifference to his dental needs by needlessly extracting several of his teeth and ignoring his requests for pain medication. Upon initial review of the complaint, the court determined that these constitutional claims were facially plausible as pled against the following defendants in their individual capacities: Dr. David Sochacki, Dr. John F. Dupont, Dr. Peter O'Shea, and Dr. Victor Shivy. Initial Review Order (Doc. No. 5). The court also permitted the plaintiff's claims against Dr. Richard Benoit, the Director of

Dental Services for Correctional Managed Health Care ("CMHC"), in his official capacity for declaratory and injunctive relief.[1] *Id.*

After service of the initial complaint, the plaintiff filed two amended complaints on May 2, 2018 and May 31, 2018. (Doc. Nos. 30, 36). The court granted his first motion to amend the complaint; Order No. 35; but before it could rule on the second amended complaint (Doc. No. 36), the defendants filed the instant motion to dismiss that complaint under Fed. R. Civ. P. 12(b)(6). (Doc. No. 37). On August 10, 2018, the plaintiff filed both an opposition to the defendants' motion to dismiss the second amended complaint and a motion for leave to file a third amended complaint. (Doc. Nos. 42 and 41). The defendants thereafter filed an objection to the plaintiff's motion for leave to file the third amended complaint, contending that they did not give consent to the amendment and that the attempt to amend is futile because the claims stated in the third amended complaint nevertheless fail to state a claim upon which relief could be granted. (Doc. No. 43).

In keeping with the principle of construing *pro se* filings liberally, and for purposes of clarity, the court considers the amended factual allegations in the plaintiff's third amended complaint (Doc. No. 41-1) along with his written opposition in ruling on the motion to dismiss. *See Armand v. Osborne*, No. 11-CV-4182 (NGG), 2014 WL 723381, *6 (E.D.N.Y. Feb. 24, 2014) (court considers motion to amend in conjunction with additional factual allegations in opposition to motion to dismiss); *Lumaj v. Williams*, No. 03-CIV-1849 (PKC), 2004 WL 1207894, *2 (S.D.N.Y. Jun. 2, 2004) (court

---

[1] In his initial complaint, the plaintiff stated that he was suing Benoit only in his official capacity. He has since withdrawn his official capacity claim and is now suing all defendants in their individual capacities for monetary, injunctive, and declaratory relief.

considered whether allegations stated in amended pleading, if true, would withstand motion to dismiss). Thus, the motion for leave to amend the complaint is GRANTED. The clerk is directed to docket the third amended complaint (Doc. No. 41-1) as a separate entry. The plaintiff is hereby notified that the third amended complaint constitutes the operative complaint. No further amendments to his complaint will be permitted absent a showing of good cause.

For purposes of the motion to dismiss, the third amended complaint shall be considered the operative pleading. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

**Standard of Review**

To withstand scrutiny under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when . . . plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the complaint must show, not merely allege, that the plaintiff is entitled to relief. *See id.*

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the court is not "bound to accept conclusory allegations or legal conclusions masquerading as

factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

"Where . . . the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Nevertheless, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Ashcroft,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

**Factual Allegations**

The plaintiff alleges the following facts in his third amended complaint. (Doc. No. 41-1). In July 2012, the plaintiff wrote a request to the dental department at Cheshire complaining of severe pain in his lower front teeth. 3d Am. Compl. ¶ 15. The plaintiff had been taking ibuprofen for his pain for two to three weeks, but it was ineffective in alleviating the pain. *Id.* In his written complaint, the plaintiff requested a root canal for his teeth. *Id.* at ¶ 16. He waited three weeks before he was able to see a dentist. *Id.*

In August 2012, the plaintiff was examined by Dr. Shivy "and/or" Dr. Sochacki. *Id. at* ¶ 17. Sochacki took x-rays of the plaintiff's lower front teeth. *Id.* at ¶ 18. Then, he "and/or" Shivy informed the plaintiff that his number 23 and 24 teeth needed to be extracted because the CMHC does not allow for root canals. *Id.* at ¶ 19. The doctors gave the plaintiff pain medication and scheduled him for the teeth extraction procedure. *Id.* at ¶ 20.

Over the next several weeks, the plaintiff continued to experience severe pain in his lower front teeth. *Id. at* ¶ 21. The pain medication that Shivy and Sochacki provided was ineffective in alleviating his pain. *Id.* The plaintiff wrote another inmate request and an administrative grievance regarding his pain and the inadequacy of the pain medication, but both documents went unanswered. *Id.* at ¶¶ 22-24.

In September 2012, the plaintiff underwent the teeth extraction "after being told once again by [Dr.] Dupont or again by [Dr.] Sochacki" that the CMHC does not perform root canals. *Id.* at ¶ 26. After the procedure, the plaintiff was denied pain medication. *Id.* at ¶ 27. One or two days later, he once again began experiencing severe pain in the area of his lower front teeth. *Id.* at ¶ 28.

On September 12, 2012, the plaintiff wrote a request to the dental unit for pain medication, but the request went unanswered. *Id.* at ¶¶ 29-30. Sochacki "should have called [him] down" for an appointment because he managed the dental unit at Cheshire but did not do so. *Id.* at ¶ 29. Days later, the plaintiff wrote another request complaining about the pain in his mouth. *Id.* at ¶ 31.

In October 2012, Sochacki and Shivy evaluated the plaintiff again and informed him that teeth numbers 25 and 26 also needed to be extracted. *Id.* at ¶¶ 32-33. None of

5

the dentists recorded a reason for ordering the extraction in the plaintiff's dental records. *Id.* at ¶ 34. The plaintiff verbally requested pain medication and that the dentists perform a root canal, but his requests were denied. *Id.* at ¶¶ 35-36.

Over the course of the next month, the plaintiff continued to suffer excruciating pain and was unable to eat solid foods. *Id.* at ¶ 37. He wrote another request for pain medication, but it went unanswered. *Id.* at ¶ 38.

In November 2012, Dupont and Sochacki extracted teeth numbers 25 and 26. *Id* at ¶ 40. Dupont "and/or" Sochacki explained to the plaintiff that the extraction of those teeth would make him eligible to receive partial dentures, but the plaintiff needed to have seven teeth extracted to receive partial dentures. *Id.* at ¶ 41.

Approximately two years later, on June 12, 2014, Sochacki and Dr. O'Shea extracted the plaintiff's right upper molar because it had an "abscess, pulpitis, heavy tartar, heavy plaque, mobility and hypersensitivity." *Id.* at ¶ 51. The plaintiff contends that the molar should not have been extracted. *Id.* at ¶ 52. Instead, the plaintiff should have received a treatment plan to save the tooth. *Id.* He disputes that the problems with his tooth warranted extraction. *Id.* at ¶ 53.

Two years after this tooth extraction, in June 2016, the plaintiff had a routine dental examination with Dr. Lichtenstein. *Id.* at ¶ 43. Lichtenstein reviewed the x-rays taken in August 2012 by Sochacki and concluded that two of his lower front teeth should not have been extracted. *Id.* at ¶¶ 43-44.

The plaintiff never consented to having any of his teeth extracted. *Id.* at ¶ 45. He contends that Dupont, Shivy, and Sochacki "should have reviewed the x-rays of [teeth numbers] 23, 24, 25, [and] 26 before deciding to extract [them]." *Id.* at ¶ 47. By

extracting his teeth, Dupont, Shivy, Sochacki, and O'Shea caused the plaintiff to have a severely weakened bite in two different areas of his mouth. *Id.* at ¶¶ 49-50, 54.

Dr. Richard Benoit is the Director of Dental Services for CMHC. *Id.* at ¶ 56. He is aware that the dental care provided to inmates in the care of the Department of Correction ("DOC") is below minimum industry standards. *Id.* at ¶ 58. Benoit "created a policy or custom of pulling teeth only in order to avoid [costly] root canals." *Id.* at ¶ 59. He also "failed to train Sochacki, Dupont, Shivy, and O'Shea to perform adequate dental and preventative dental care." *Id.* at ¶ 60.

**Discussion**

The defendants raise four principal arguments in support of their motion to dismiss. First, they argue that the plaintiff has failed to sufficiently allege Sochacki's personal involvement in the alleged constitutional violations. Second, they argue that the claims against Shivy and Dupont are barred by the three-year statute of limitations. Third, they argue that the plaintiff has failed to state an Eighth Amendment claim against O'Shea. Finally, the defendants contend that the plaintiff cannot state a supervisory liability claim against Benoit. The plaintiff disagrees with the merits of each of these arguments and counters that he has stated plausible claims against all defendants.

**Claims against Sochacki**

Sochacki seeks dismissal of the claims against him because, he argues, the plaintiff failed to allege his personal involvement in any of the alleged constitutional deprivations. The argument is, necessarily, based on the allegations in the plaintiff's second amended complaint (Doc. No. 36). Insofar as the court granted the plaintiff's

motion for leave to amend his complaint, the court considers the defendant's argument against the allegations in the third amended complaint.

It is well settled that a plaintiff must allege facts showing a defendant's personal involvement in a constitutional deprivation in order to recover damages against that defendant in a § 1983 action. *See Ashcroft*, 556 U.S. at 676 (plaintiff must plead that each government official, through his own actions, violated the Constitution); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("[I]n order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation"). A plaintiff may meet this burden by alleging, *inter alia,* that: (1) the defendant directly participated in the deprivation; (2) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) the defendant exhibited deliberate indifference to his rights by failing to act on information indicating that unconstitutional acts were occurring. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001).

Here, construing liberally the allegations in the third amended complaint, the plaintiff has stated a plausible Eighth Amendment claim against Sochacki. He alleges that Sochacki participated in the needless extraction of his lower front teeth and molar and denied him pain medication on several occasions. *See* 3d Am. Compl. ¶¶ 19, 27, 35-36, 51. Although the plaintiff's allegations against Sochacki in the second amended complaint were sparse on this issue, the allegations in the third amended complaint provide sufficient allegations as to Sochacki's role in his treatment. The motion to dismiss the claims against Sochacki on this basis is therefore DENIED.

**Claims against Shivy and Dupont**

Shivy and Dupont seek dismissal of the claims against them because, they aver, the claims are barred by the applicable statute of limitations. Section 1983 claims arising in Connecticut are governed by the three-year limitations period set forth in Conn. Gen. Stat. § 52-577. *Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016); *Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994). "Although a federal court looks to state law to determine the applicable statute of limitations for claims arising under section 1983, it must look to federal law to determine when a federal claim accrues." *Castillo v. Hogan*, 14 Civ. 1166 (VAB), 2016 WL 706167, *3 (D. Conn. Feb. 22, 2016) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of his action." *Harnage*, 665 F. App'x at 83 (quoting *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)). Because the statute of limitations is an affirmative defense, the burden is on the defendants to establish when the constitutional claims accrued and when the limitations period expired. Fed. R. Civ. P. 8(c); *Egan v. Kennedy*, No. 04-CV-6626 (CJS), 2008 WL 4647740, *3 (W.D.N.Y. Oct. 17, 2008) (quoting *Omollo v. Citibank, N.A.*, No. 07-CIV-9259 (SAS), 2008 WL 1966721, *3 (S.D.N.Y. May 6, 2008)).

Here, all of the allegations against Shivy and Dupont concern conduct from 2012, undisputedly more than three years prior to the commencement of this civil action in May 2017. Both Shivy and Dupont were involved in the extraction of the plaintiff's lower front teeth in September and November of 2012. The plaintiff contends, however, that it was not until his appointment with Dr. Lichtenstein in June of 2016 when he discovered that two of his lower front teeth should not have been extracted and could have been saved. Thus, the plaintiff argues that his claim did not accrue until June 2016. The

9

plaintiff is wrong. "Delay in discovering the cause of the injury does not prevent the claim from accruing—'In applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.' *Rotella v. Wood,* 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)." *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 348–49 (S.D.N.Y. 2009).

Moreover, the plaintiff's contention is belied by the allegations in his complaint, that the extraction of his teeth in 2012, combined with the denial of pain medication over the course of several months in 2012, amounted to deliberate indifference to his dental needs. In light of these allegations, it is manifest that the plaintiff knew in late 2012 that the treatment he received from Dupont and Shivy, or lack thereof, was causing him severe pain and that the defendants were denying him pain medication. He also knew at that time that the defendants chose to extract his teeth because the CMHC did not permit root canals. Therefore, the plaintiff's claims against Shivy and Dupont are outside the statute of limitations for such claims.

In response, the plaintiff invokes the continuing violation doctrine to argue that his claims did not accrue until a later date. "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). "When [a] plaintiff brings a [s]ection 1983 claim challenging a discriminatory policy, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

In *Shomo*, the Second Circuit held that "the continuing violation doctrine can

apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." In order for the doctrine to apply, the "plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy." *Id.* (quoting *Harris*, 186 F.3d at 250)); *see also Benitez v. Parmer*, No. 9:12-CV-0448 (GTS/DEP), 2013 WL 5310245, *15 (N.D.N.Y. Jul. 8, 2013). The doctrine does not apply to discrete acts of unconstitutional conduct that are not traceable to the alleged policy of deliberate indifference. *See id.*

The plaintiff's reliance on the continuing violation doctrine to save his claims against Dupont and Shivy is misplaced. Although he alleges that there exists an ongoing policy in DOC facilities of extracting teeth over performing root canals, there are no allegations that Dupont or Shivy committed any "non-time-barred" acts in furtherance of that policy. As indicated, Dupont and Shivy treated the plaintiff in 2012, four and one-half years before the filing of the instant action. "The Second Circuit's decision [in *Shomo*] … made clear that in order for the continuing violation doctrine to apply [to claims against specific individuals], [a ] plaintiff [must]… show that those specific individuals committed at least one wrongful act within the statutory time period." *Gonzalez v. Wright,* 665 F. Supp. 2d 334, 350 (S.D.N.Y. 2009).

The motion to dismiss the Eighth Amendment claims against Dupont and Shivy is GRANTED.

**Claim against O'Shea**

O'Shea seeks dismissal of the claim against him insofar as the plaintiff has failed to state a plausible claim of deliberate indifference to his serious medical needs.

11

Deliberate indifference to a prisoner's serious medical and dental needs constitutes cruel and unusual punishment under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Harrison v. Barkley*, 219 F.3d 132 (2d Cir. 2000). To state a claim for deliberate indifference to a serious medical or dental need, the plaintiff must show both that his need was serious and that defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105).

There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). There is no claim in this motion that the plaintiff's condition did not present a serious dental need.

Subjectively, defendants must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 280. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. In addition, a difference of opinion regarding what constitutes an appropriate response and/or treatment to the prisoner's medical conditions does not establish an Eighth Amendment claim. *See Ventura v.*

*Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The act complained of must "shock[] the conscience" by constituting a "[a] complete denial of, or intentional effort to delay access to, medical care, or a reckless or callous indifference" to the plaintiff's well-being. *See McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970); citing *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D.N.Y. 1984)).

Construing the plaintiff's allegations liberally, his Eighth Amendment claim against O'Shea is based on the unnecessary extraction of his upper right molar in June 2014, to which he did not consent. The extraction caused the plaintiff to suffer from a severely weakened bite. The plaintiff further avers that the extraction was performed in furtherance of an unconstitutional policy created by the CMHC to extract teeth in an effort to avoid more costly procedures like root canals.

O'Shea contends that the plaintiff's claim constitutes a mere disagreement over treatment, not deliberate indifference. He relies on the plaintiff's allegations that O'Shea extracted his molar because it had an "abscess, pulpitis, heavy tartar, heavy plaque, mobility, and hypersensitivity" and the plaintiff's assessment that these problems did not warrant extraction. These allegations, taken alone, show only a difference of opinion on the appropriate response to the plaintiff's dental problems. However, the plaintiff has alleged that the extraction was not only unnecessary, but performed in furtherance of the CMHC's unconstitutional policy of performing extractions over more effective and costly dental procedures. The motion to dismiss the Eighth Amendment claim against O'Shea is DENIED.

**Claim against Benoit**

Lastly, Benoit seeks dismissal of the claim against him because, he argues, the plaintiff has failed to state a supervisory liability claim against him. His argument is twofold – the plaintiff failed to allege that Benoit was personally involved in any of the dental care, or denial thereof, and the plaintiff cannot establish supervisory liability of Benoit because his claims against the other subordinate defendants are subject to dismissal. The latter argument fails insofar as the court has denied the motion to dismiss against O'Shea and Sochacki.

As previously discussed, "[i]t is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted); *see also Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir. 1973) (doctrine of *respondeat superior* does not suffice for claim of monetary damages under § 1983). A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

Here, the plaintiff alleges that Benoit, as Director of Dental Services for CMHC, "created a policy or custom of pulling teeth only[,] in order to avoid [costly] root canals"

14

and failed to train the other defendants to perform "adequate dental and preventative dental care." He further alleges that this unconstitutional policy led the other defendants to extract his teeth without his consent as opposed to performing more appropriate and less harmful dental procedures. These allegations, in conjunction with the Eighth Amendment claims against O'Shea and Sochacki are sufficient to defeat the motion to dismiss by Benoit. The motion to dismiss the claim against Benoit is therefore DENIED.

Fourteenth Amendment Claim

In its Initial Review Order, the court left extant the plaintiff's Eighth and Fourteenth Amendment claims. (Doc. No. 5) The defendants did not address the Fourteenth Amendment claim in their motion to dismiss, and the plaintiff continues to pursue these claims in his third amended complaint.

Upon further consideration, with the nature and scope of the plaintiff's claims more manifest, the court concludes that the plaintiff cannot prevail on his claim that the defendants violated his right to due process under the Fourteenth Amendment.

The generalized notion of substantive due process under the Fourteenth Amendment does not apply when another constitutional amendment provides an explicit textual source of protection against the wrongful conduct. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Here, the plaintiff's Fourteenth Amendment due process claim is based on the same allegations as his Eighth Amendment claim. He has not alleged that he was deprived of a separate liberty or property interest without due process of law. His claim is entirely derivative and duplicative of his Eighth Amendment claim for deliberate indifference to his medical needs. Therefore, the Fourteenth Amendment claim is DISMISSED.

SO ORDERED this 9th day of October, 2018 at Bridgeport, Connecticut.

_____/s/_____
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE