UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN INGRAM,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    No. 3:17-cv-870 (KAD) |
| | : |
| DAVID SOCHACKI, D.D.S., *et al.*<br>    *Defendants*. | :<br>:    October 1, 2019 |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DE#60)**

**Statement of the Case**

On May 24, 2017, Plaintiff, John Ingram, a state prisoner in the custody of the Connecticut Department of Correction ("DOC"), filed a complaint *pro se* under 42 U.S.C. § 1983 against several state correctional dental care professionals for violating his constitutional rights. Compl. (DE#1). After three amended complaints and a ruling from this Court granting in part and denying in part a motion to dismiss, the case now consists of one Eighth Amendment claim for deliberate indifference to serious dental needs against three dental care professionals: Dr. David Sochacki, Dr. Peter O'Shea, and Dr. Richard Benoit. *See* Ruling on Mot. to Dismiss (DE#45).

On May 15, 2019, the three remaining defendants ("Defendants") moved for summary judgment asserting that the undisputed material facts demonstrate that they are entitled to judgment as a matter of law. Alternatively, they claim that they are entitled to qualified immunity under the circumstances presented. The Plaintiff filed his opposition to Defendants' motion on July 17, 2019 and, per the Court's leave, a supplementary

opposition on September 12, 2019.[1]  For the following reasons, Defendants' motion is GRANTED.

**Standard of Review**

A party seeking summary judgment bears the burden of demonstrating that there are no genuine issues of material fact in dispute and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law" and is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (mere existence of alleged factual dispute will not defeat summary judgment motion). The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curium*) (internal quotations omitted; citations omitted).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Id. see also First Nat. Bank of*

---

[1] Magistrate Judge Sarah A. L. Merriam permitted Plaintiff an opportunity to file a supplemental opposition to the motion for summary judgment after granting his motion to compel additional discovery. *See* Order on Mot. to Compel Disc. and Mot. for Sanctions (DE#75).

*Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968) (nonmoving party must submit evidence supporting factual dispute that will require factfinder to resolve differing versions of truth at trial).

The Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted). Despite this liberal interpretation, however, "[u]nsupported allegations do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *See Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**

The Court draws the following material facts from the parties' Local Rule 56(a) Statements and the exhibits on record.

At all times relevant to this case, Plaintiff was confined at the Cheshire Correctional Institution ("Cheshire") in Connecticut. Defs.' Ex. A (Pl.'s Med. Records) (DE#62), 18-29. On September 10, 2012, Plaintiff had a dental consultation with Dr. Victor Shivy. *Id.* at 14; Defs.' Local Rule 56(a)(1) Statement ("Defs.' Stmt.") (DE#60-2)

¶ 5; Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s Stmt.") (DE#73) ¶ 5. During that consultation, Plaintiff gave written consent for the DOC Division of Health Services to extract two of his teeth, identified as numbers 23 and 24. Defs.' Ex. A at 14; Defs.' Stmt. ¶ 6; Pl.'s Stmt. ¶ 6. On November 20, 2012, Plaintiff met with Dr. John F. Dupont for another dental evaluation. Defs.' Stmt. ¶ 7; Pl.'s Stmt. ¶ 7. During that appointment, he consented in writing to the extraction of two more of his teeth, numbers 25 and 26. Defs.' Stmt. ¶ 8; Pl.'s Stmt. ¶ 8; Defs.' Ex. A at 13. The extraction occurred that same day. *Id.*

Dr. Sochacki began work at Cheshire on November 2, 2012. Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2; Defs.' Ex. B ¶ 6. On November 26, 2012, he wrote a note in Plaintiff's medical chart stating, "Area healing well," presumably in reference to the teeth extraction on November 20, 2012. Pl.'s Ex. M (Dental Record) (DE#73 at 73). Work logs show that Dr. Sochacki was working at Cheshire on November 20, 2012 from 7:00 a.m. to 3:00 p.m.; Pl.'s Ex. AA (Work Logs) (DE#77 at 11); but they do not indicate that he participated in the extraction procedure with Dr. Dupont. Dr. Sochacki continued to treat Plaintiff's dental needs in 2013 and 2014. Defs.' Ex. A at 3, 6, 8, 10, 12. He ordered partial dentures for Plaintiff in December 2013 and again in April 2014. *Id.* at 6, 10; Defs.' Ex. D ¶¶ 17, 20. Dr. Benoit, the Director of Dental Services for Correctional Managed Health Care ("CMHC"), approved both orders. Defs.' Ex. D at ¶¶ 4, 17, 20.

On June 12, 2014, a correction officer working in the kitchen at Cheshire called the medical unit and reported that Plaintiff was having difficulty working due to a constant toothache. Defs.' Stmt. ¶ 11; Pl.'s Stmt. ¶ 11; Defs. Ex. A at 12; Defs.' Ex. C (Aff. of Dr. Peter O'Shea) ¶ 11. The concerns expressed by Plaintiff and his inability to

work deemed the issue urgent, and DOC personnel brought Plaintiff to the dental area where he was evaluated by Dr. O'Shea. Defs.' Stmt. ¶¶ 10, 12; Pl.'s Stmt. ¶¶ 10, 12. Dr. O'Shea asked Plaintiff to identify the specific tooth that was causing him pain, and Plaintiff pointed to his number 2 molar. Defs.' Stmt. ¶ 13; Pl.'s Stmt. ¶ 13; Defs.' Ex. C at ¶ 13. Dr. O'Shea reviewed Plaintiff's x-rays from his medical records and observed heavy tartar, plaque, and "Class III mobility" on the number 2 molar. Defs.' Stmt. ¶ 16; Pl.'s Stmt. ¶ 16; Defs.' Ex. C at ¶ 16. He also observed periodontal pocketing, pus formation, and extreme tenderness in the affected area and that Plaintiff had an extensive history of periodontal disease. Defs.' Ex. C at ¶¶ 18, 19.

Dr. O'Shea diagnosed the Plaintiff as suffering from irreversible pulpitis,[2] which neither antibiotics nor analgesics can effectively treat. Defs.' Ex. A at 8; Defs.' Ex. C at ¶ 17. Upon Dr. O'Shea's recommendation, the Plaintiff consented to an extraction of his number 2 molar. Defs.' Ex. A at 5, 8; Defs.' Ex. C at ¶ 20; Pl.'s Stmt. ¶ 22. After the extraction, Dr. O'Shea prescribed Motrin, which was to be taken three times daily. Defs.' Stmt. ¶ 27; Pl.'s Stmt. ¶ 27; Defs.' Ex. C at ¶ 27.

As the Director of Dental Services for CMHC, Dr. Benoit oversees the dental treatment provided to inmates and enforces departmental policies related to such treatment. Defs.' Ex. D at ¶ 6. Such policies provide for oral care services, including root canals, apioectomies, and other forms of oral surgery. Defs.' Ex. E (DOC Admin. Dir. 8.4) at 4. Dr. Benoit does not, however, provide treatment to inmates, and he has no

---

[2] Pulpitis is an infection of the pulp, the innermost part of a tooth which contains the blood supply and nerve connections. *What is Pulpitis?*, HEALTH LINE, https://www.healthline.com/health/pulpitis. Irreversible pulpitis occurs when the pain and inflammation become so severe that the pulp can no longer be saved. *Id.* Reversible pulpitis, on the other hand, occurs where the inflammation is mild and can be treated with anti-inflammatory medications or sensitive toothpaste. Pl.'s Ex. F (Dr. Benoit's Resp. to Second Set of Interrog.) ¶ 4.

5

recollection of receiving any correspondence regarding Plaintiff's dental treatment. Defs.' Ex. D at ¶¶ 9, 11.

**Discussion**

In support of their motion for summary judgment, Defendants argue that the evidence fails to establish any Eighth Amendment violation with respect to the treatment of Plaintiff's dental needs. Specifically, they contend that there is no evidence showing Dr. Sochacki's involvement in any of the tooth extraction procedures or Dr. Benoit's knowledge of any unconstitutional practices with respect to inmate dental treatment. *See* Defs.' Mem. at 8, 12-14. As for Dr. O'Shea, they argue that Plaintiff's claim amounts to nothing more than a disagreement over the proper course of treatment for the infected molar. *Id.* at 9-11. Alternatively, Defendants argue that they are entitled to qualified immunity. *Id.* at 15-21.

Plaintiff counters that Dr. Sochacki was working at Cheshire during the time of the second extraction on November 20, 2012 and that he should have reviewed Plaintiff's x-rays to determine whether teeth numbers 25 and 26 were salvageable before deciding to extract them. Pl.'s Opp'n at 2; Pl.'s Supp. Opp'n at 1-3. He argues that Dr. O'Shea departed from "accepted medical standard[s]" by concluding that extraction of the molar was necessary when the condition could have been treated by other means. Pl.'s Opp'n at 3-4. Finally, Plaintiff contends that Dr. Benoit is liable for creating a "culture of dental treatment . . . to pull teeth only" as opposed to performing more effective dental treatments such as root canals. *Id.* at 5.

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104

6

(1976)). The protection also applies to a prisoner's serious dental needs. *See Harrison v. Barkley*, 219 F.3d 132 (2d Cir. 2000). To state a claim for deliberate indifference to a serious dental need, the plaintiff must show both that his need was serious and that defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 105).

There are both objective and subjective components to a deliberate indifference claim. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be regarding a condition that is "sufficiently serious" so as to warrant Eighth Amendment protection. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks omitted). Subjectively, defendants must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).

Allegations of negligence or medical malpractice, i.e. that the defendant breached the applicable standard of care for treatment, does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 280. "Medical malpractice does not become a constitutional violation merely because the [patient] is a prisoner." *Estelle*, 429 U.S. at 106. Similarly, a difference of opinion regarding what constitutes an appropriate response to and/or treatment for a prisoner's medical conditions does not establish an Eighth Amendment claim. *See Ventura v. Sinha*, 379 F. App'x 1, 2–3 (2d Cir. 2010); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). The defendant's conduct in this regard must "shock[] the conscience" by

7

constituting a "[a] complete denial of, or intentional effort to delay access to, medical care, or a reckless or callous indifference" to the plaintiff's well-being. *See McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (quoting *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864 (2d Cir. 1970); citing *Harding v. Kuhlmann*, 588 F. Supp. 1315 (S.D.N.Y. 1984)).

The court accepts, for purposes of this motion, that the Plaintiff's dental condition was sufficiently serious to implicate the Eighth Amendment. The question therefore is whether the defendants were deliberately indifferent to the Plaintiff's needs occasioned by that condition. With respect to Dr. Sochacki, the Plaintiff has not presented any evidence that Dr. Sochacki was personally involved in any of the procedures which he claims violated his Eighth Amendment rights. "It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). The mere fact that Dr. Sochacki was working at Cheshire on the date that Plaintiff's second set of teeth was extracted does not establish that Dr. Sochacki participated in the extraction procedure. Indeed, the medical record reveals no such involvement. But even if it did, the record is clear that Plaintiff consented to the extraction. Plaintiff's additional assertion that Dr. Sochacki "should have reviewed [his] x-rays" for teeth numbers 25 and 26 prior to the extraction is meritless because (1) it is premised on the unsupported conclusion that Dr. Sochacki was aware of and/or participated in the extraction on November 20, 2012, and (2) such a claim, at best, is one of medical malpractice, not deliberate indifference. Accordingly, there is no genuine issue of material fact as to whether Dr. Sochacki was deliberately indifferent to the

8

Plaintiff's serious dental needs and no reasonable jury could conclude from the evidence presented that Dr. Sochacki violated Plaintiff's Eighth Amendment protection against cruel and unusual punishment.

With respect to the claims against Dr. O'Shea, the Plaintiff's evidence, at best, supports a claim for negligence or medical malpractice. He contends that Dr. O'Shea misdiagnosed him as having irreversible pulpitis as opposed to reversible pulpitis, "departed from . . . accepted medical standard[s]" by not developing a plan to save Plaintiff's number 2 molar and extracted the molar without Plaintiff's informed consent.[3] These are quintessential allegations of medical malpractice and therefore do not support an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106; *Salahuddin*, 467 F.3d at 280. In sum, to the extent Plaintiff disagrees with Dr. O'Shea's conclusions or methods, such disagreements do not reasonably support a finding that Dr. O'Shea acted with "a reckless or callous indifference" to his dental needs. *McCloud*, 677 F. Supp. at 232; *see also Herbert v. NYC Dep't of Corr.*, No. 10-CV-8799 (BSJ) (RLE), 2012 WL 3834660, at *3 (S.D.N.Y. Aug. 21, 2012) (allegation that defendant dentist should have done more than prescribe antibiotics insufficient to state Eighth Amendment claim); *Green v. Khrisnaswamy*, 328 F. Supp. 2d 417, 420 (W.D.N.Y. 2004) (inmate's allegation that defendant dentist should have given him option of using plastic tooth-colored fillings instead of metal amalgam does not establish deliberate indifference). Accordingly, the Eighth Amendment claim against Dr. O'Shea also fails as a matter of law.

As to the Plaintiff's supervisory liability claim against Dr. Benoit the Plaintiff must establish that Dr. Benoit was "personally involved" in the constitutional deprivation

---

[3] It is worth noting that this claim also has little to no evidentiary support in the record.

in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright*, 21 F.3d at 501; *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003). In this regard, the Plaintiff contends that Dr. Benoit acted with deliberate indifference by establishing a policy in DOC facilities of "pull[ing] teeth only" as opposed to exploring other forms of adequate dental treatment. However, there is absolutely no evidence in the record to support a claim that such a policy exists. To the contrary, the record is replete with evidence that a variety of dental treatments and services are available to inmates with dental needs. Therefore, on this issue, there is no genuine issue of material fact and Dr. Benoit is entitled to judgment as a matter of law as well.

**Conclusion**

The Court concludes that there are no genuine issues of material fact with respect to the Plaintiff's Eighth Amendment claim and Defendants are entitled to judgment as a matter of law. The Court need not therefore take up the Defendants' affirmative defense of qualified immunity. The motion for summary judgment (DE#60) is GRANTED. The clerk is directed to enter judgment for Defendants and close this case.

SO ORDERED this 7th day of October, 2019 at Bridgeport, Connecticut.

\_\_/s/_____
KARI A. DOOLEY

UNITED STATES DISTRICT JUDGE